UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

REGINALD JENKINS,

Defendant.

______________________________________/

Case No. 2:26-cr-20428

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A *FRANKS* HEARING (ECF No. 19)**

To investigate a burglary, the Detroit Police Department ("DPD") applied for a search warrant, supported by an officer's statement that the suspects exited a late-model Ford Fusion when they arrived at the victims' home. Defendant Reginald Jenkins's wife owns a 2015 Ford Fusion, which was seen at a home on Pembroke Avenue. The DPD obtained the search warrant, searched the Pembroke home, and seized a firearm—which led to the charges against Jenkins here.

Jenkins now seeks an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the officer's identification of the vehicle. Jenkins argues that surveillance footage was too unclear to support the officer's statement that the vehicle was a late-model Ford Fusion. The Government responds that the images are

consistent with that identification and that Jenkins has not made the requisite preliminary showing of deliberate or reckless falsity.

This Court agrees that Jenkins has not made the required preliminary showing. Even accepting his contention that the footage does not permit a definitive identification, that uncertainty, without more, does not establish that the officer knowingly or recklessly misrepresented what he observed. Therefore, this Court will deny Jenkins's motion.

## I. BACKGROUND

On February 4, 2026, DPD Officer Ian McBee obtained a warrant to search a residence on Pembroke Avenue in Detroit for evidence of a home invasion that occurred three days earlier. ECF No. 19-2 at PageID.83–84. His affidavit described surveillance footage showing three suspects arriving at the victims' home at 5:40 a.m. in a "dark colored late model Ford Fusion." *Id.* at PageID.84. At least one of the suspects announced that they were DPD officers and forced entry into the home. *Id.* At least two of the suspects were armed, and one wore what appeared to be green camouflage pants with a cargo pocket, dark boots or shoes, and a dark jacket. *Id.* Additional footage captured gunfire, the suspects leaving the home, and one suspect asking another, "why did you shoot me?" to which another suspect responded, "my bad." *Id.* at PageID.85.

The affidavit also explains that Jenkins arrived at a hospital that morning with a gunshot wound. *Id.* at PageID.86. Jenkins was wearing clothing that McBee believed matched the clothing of one of the suspects. *Id.* According to the affidavit, McBee reviewed footage from Jenkins's apartment complex and identified a black Ford Fusion arriving at approximately 6:26 a.m. *Id.* at PageID.87. He also observed a person he believed to be Jenkins enter another vehicle, which then left the complex. *Id.* Based on the relevant travel times, McBee explained that he believed the sequence was consistent with Jenkins traveling from the robbery to his apartment complex and then to the hospital. *Id.* at PageID.88.

A law-enforcement-database inquiry identified Pamela Jenkins, Defendant Jenkins's wife, as the registered owner of a 2015 Ford Fusion. *Id.* at PageID.86. License-plate-reader information showed that the vehicle was black. *Id.* McBee also located a license-plate-reader image showing the vehicle parked in the driveway of the Pembroke residence, and a database inquiry associated Pamela Jenkins with that address. *Id.* at PageID.90. Based on those facts and the preceding investigation, McBee asserted that evidence of the home invasion was reasonably likely to be inside the Pembroke residence. *Id.* The search yielded a firearm, which resulted in Jenkins's charge for felon in possession of a firearm and ammunition. ECF No. 19 at PageID.71; *see also* ECF No. 1.

Jenkins moved to suppress the evidence seized from the Pembroke home and separately moved for a *Franks* hearing. ECF Nos. 18; 19. The Government filed a combined response opposing both motions. ECF No. 24. Jenkins's *Franks* motion challenges McBee's identification of the robbery vehicle as a late-model Ford Fusion, arguing that the footage shows only an obscured sedan and cannot support that identification. ECF No. 19 at PageID.73–79. The motion is fully briefed, *see* ECF Nos. 24; 28, and this Court heard argument on the motion on September 21, 2026, *see* ECF Nos. 26; 30.[1]

## II. LEGAL STANDARD

"To demonstrate entitlement to [a *Franks*] hearing, a defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (quoting

[1] At the same hearing, this Court also heard argument on Jenkins's motions to suppress, ECF Nos. 18; 21. At the conclusion of the hearing, this Court ordered supplemental briefing concerning the number of Flock license-plate readers in the City of Detroit, originally due October 5, 2026. That briefing is now due November 4, 2026. The supplemental briefing bears on Jenkins's separate motion to suppress the evidence seized from the Pembroke home, ECF No. 18, because the affidavit supporting the search of the Pembroke home relied in part on the challenged data. This Court therefore reserves decision on both suppression motions until supplemental briefing is complete. This opinion addresses only whether Jenkins has made the preliminary showing necessary to obtain a *Franks* hearing.

*Franks*, 438 U.S. at 155–56). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 156).

The affidavit supporting a search warrant is presumed valid. *United States v. Bateman*, 947 F.3d 996, 1008 (6th Cir. 2019). The defendant must identify the challenged statement, explain the asserted falsity, and support the allegation of deliberate or reckless misrepresentation with an offer of proof. *Id.* A conclusory accusation or a desire to question the affiant is insufficient. *Franks*, 438 U.S. at 171.

The inquiry distinguishes an inaccurate statement from a deliberately or recklessly false one. *Id*. Moreover, negligence and innocent mistakes do not satisfy *Franks*. *Id.* Whether an affiant acted with reckless disregard for the truth turns on the affiant's state of mind when preparing the affidavit, including whether the affiant seriously doubted the information or had obvious reasons to question its accuracy. *United States v. O'Neill*, 94 F.4th 531, 539 (6th Cir. 2024). *Franks* does not demand that every factual statement ultimately prove correct. *Franks*, 438 U.S. at 165. Rather, the affiant must "believe[] or appropriately accept[]" the information as true. *Id.*

If the defendant makes the required preliminary showing of deliberate or reckless falsity, the court must evaluate whether the affidavit would establish probable cause without the challenged material. *Id.* at 171–72. If the remaining allegations suffice, no hearing is required. *Id.* If a hearing is required, the defendant

must establish the deliberate or reckless falsity by a preponderance of the evidence; suppression follows only if the corrected affidavit is insufficient to establish probable cause. *Id.* at 155–56. That is to say, the preliminary showing required to obtain a hearing and the ultimate showing required to obtain suppression are distinct. *See id.*

## III. DISCUSSION

### A. Jenkins's Privacy Interest in the Pembroke Home

The Government first argues that Jenkins cannot challenge the search warrant at all because he denied living or staying at the Pembroke home and has not established a reasonable expectation of privacy there. ECF No. 24 at PageID.124–25. Jenkins responds that he was the only occupant present during the search and kept clothing and his Social Security card in the home, which he identifies as his wife's residence. ECF No. 28 at PageID.152–154. For purposes of this motion, this Court assumes without deciding that Jenkins had a protected privacy interest in the residence. But even with that assumption, he has not made the preliminary showing required for a *Franks* hearing. This Court therefore does not resolve the Parties' competing accounts of Jenkins's relationship to the property in this opinion.

### B. Preliminary Showing of Knowing or Reckless Falsity

Jenkins argues that McBee's unqualified identification of the robbery vehicle as a late-model Ford Fusion was false or reckless because the surveillance footage

does not definitively reveal the car's make and model. ECF No. 19 at PageID.78–79. The Government responds that the visible headlights and taillights resemble those of a 2015 Ford Fusion and that uncertainty about the identification does not establish deliberate or reckless falsity. ECF No. 24 at PageID.136–38. This Court finds that Jenkins's proffer does not bridge the gap between a potentially mistaken identification and a knowingly or recklessly false statement.

Jenkins identifies the challenged statement and points to surveillance imagery as supporting evidence. ECF No. 19 at PageID.78–79. His request thus rests on more than a mere desire to cross-examine the affiant. *See Franks*, 438 U.S. at 171. The question, however, is whether that evidence makes a substantial preliminary showing of knowing or reckless falsity. *See id.*

The still images of the vehicle reproduced in the briefs depict a dark vehicle under limited lighting, which do not establish its make and model with certainty. ECF No. 19 at PageID.75, 78; ECF No. 24 at PageID.136–137. Even accepting Jenkins's description of the footage as inconclusive, however, does not establish that McBee fabricated the identification or seriously doubted it. Jenkins's argument rests on the proposition that the footage cannot conclusively establish that the car was a Ford Fusion. *See* ECF No. 19 at PageID.78. But he identifies no affirmative feature inconsistent with a Ford Fusion, and no other circumstance indicating that McBee disbelieved the identification. ECF No. 19 at PageID.74–79.

Of course, Jenkins need not identify the actual make and model of the vehicle in the image, nor produce a direct admission of dishonesty to obtain a *Franks* hearing. Evidence showing that an identification had no discernible basis, or that the officer ignored an obvious contradiction, could bear on recklessness. *See O'Neill*, 94 F.4th at 539 (explaining that reckless disregard for the truth turns on whether the affiant had obvious reasons to doubt its accuracy). Here, though, the reproduced images show portions of the vehicle's outline and lights, and the Government identifies specific visual features that support McBee's description. ECF No. 24 at PageID.136–37. This Court need not adopt that comparison as a definitive identification to conclude that the imagery does not make the identification *obviously* baseless. Further, the affidavit disclosed that McBee had more than eight years of law-enforcement experience and had previously served in the Commercial Auto Theft Section. ECF No. 19-2 at PageID.84. That history does not establish the accuracy of his identification or specialized training in identifying vehicles from video, but it does provide additional context for his observation.

Jenkins also emphasizes that McBee used categorical language and did not provide the issuing judge with the footage or still images. ECF No. 19 at PageID.79. However, an officer's description need not be correct in every detail, and instead the information presented must be "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. In fact, *Franks* expressly recognizes that an affidavit

may contain information the affiant accepts as true even if the information later proves incorrect. *Id.* To be entitled to a *Franks* hearing, Jenkins must make a substantial preliminary showing that McBee's identification was knowingly false or made with reckless disregard for the truth; the mere possibility that McBee drew an incorrect inference from the footage does not satisfy that burden. *See United States v. Higgins*, 141 F.4th 811, 816–17 (6th Cir. 2025) (rejecting a *Franks* challenge where an officer presented his interpretation of evidence as fact because the interpretation had a reasonable evidentiary basis and the defendant failed to establish a knowing or reckless falsehood); *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (explaining that reckless disregard requires evidence that the affiant subjectively entertained serious doubts about the truth of his statements). Here, the absence of qualifying language or attached images, coupled with the asserted lack of visual certainty, does not establish that McBee knew his description was false or had obvious reasons to doubt it. *See, e.g.*, *O'Neill*, 94 F.4th at 539; *see also United States v. Cortez*, 108 F.4th 1, 11 (1st Cir. 2024) (rejecting a request for a *Franks* hearing where defense counsel's inability to identify the defendant from video footage was unaccompanied by evidence that law enforcement's identification was false or intentionally or recklessly made). On this proffer, the possibility of an overconfident or mistaken identification does not establish the state of mind required by *Franks*.

Jenkins's reply brief does not supply the missing evidence, either. There, Jenkins characterizes the connection between Pamela Jenkins's vehicle and the robbery vehicle as a police "gut feeling," but adds no evidence that McBee knowingly or recklessly misdescribed the footage. ECF No. 28 at PageID.156. Moreover, McBee did not represent in the affidavit that the two vehicles were definitively the same. Rather, he expressly characterized that conclusion as his belief, explaining the circumstances supporting his inference. ECF No. 19-2 at PageID.86–88. The affidavit sets out the circumstances supporting that inference, including the vehicle's color and model; its ownership; its appearance at Jenkins's apartment complex, whether tenuously related or not; and the sequence of events. *Id.* Whether those circumstances establish probable cause to search the Pembroke home is a separate question. But disagreement with their inferential force does not establish that McBee deliberately or recklessly misrepresented what he knew about the vehicle and circumstances surrounding the burglary.

Finally, Jenkins requests a hearing to learn why McBee stated the identification definitively. ECF No. 19 at PageID.72. But the preliminary showing must precede the opportunity to question the affiant. *Franks*, 438 U.S. at 170–71; *Bateman*, 945 F.3d at 1008. Jenkins's submission may raise a question about the reliability of the identification but it does not make the substantial preliminary showing of knowing or reckless falsity necessary for an evidentiary hearing.

Because this Court finds that Jenkins is not entitled to a *Franks* hearing, it need not decide whether an affidavit omitting that identification would establish probable cause. And because this Court is not yet deciding Jenkins's motions to suppress, it does not address Jenkins's argument that the search warrant lacked probable cause or was too bare bones to pass muster even under the good-faith exception. *See* ECF No. 19 at PageID.79.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant Reginald Jenkins's Motion for Hearing Pursuant to *Franks v. Delaware*, ECF No. 19, is **DENIED**. To the extent that motion also requests suppression solely based on the alleged *Franks* violation, that request is **DENIED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 21, 2026